Argued March 5, reversed June 1, petition for
rehearing denied June 26, 1973

WARD, *Respondent, v.* OREGON STATE
BOARD OF NURSING, *Petitioner.*

510 P2d 554

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Dale A. Rader,* Portland, argued the cause and submitted a brief for respondent.

O'CONNELL, C. J.

The Oregon State Board of Nursing entered an order revoking the nursing license of Fern Ward. The circuit court set aside the order and the Board appealed to the Court of Appeals, which affirmed the judgment of the circuit court. 11 Or App 353, 502 P2d 265 (1972). We granted the Board's petition for review. We reverse.

The Board charged respondent Fern Ward with the violation of ORS 678.111 (7), in that respondent's acts "were and are conduct derogatory to the standards of professional nursing." The specific charge was that respondent permitted and instructed her daughter, Karen Ryan, to perform and serve as a registered nurse and recommended her as a registered nurse when respondent knew or had reason to know that her daughter was not licensed in Oregon as a registered nurse.

A hearing was held after which the Board entered its order revoking respondent's license. Upon appeal to the Circuit Court for Multnomah County the order of the Board was set aside on the ground that there was "insufficient probative evidence to support" the charges in the complaint, "either as to the existence of standards or as to acts derogatory thereof" and that ORS 678.111 (7) "standing alone is ambiguous and incapable of interpretation, is too broad and undefined terms (sic) and is unconstitutional."

The Court of Appeals held that the ground for revocation of a license to practice professional nursing stated in ORS 678.111 (7) ("Conduct derogatory to the morals or standards of professional nursing") was an adequate standard without the promulgation of administrative rules and that the statute was, therefore, not constitutionally void for vagueness. But the Court of Appeals affirmed the trial court decree upon the ground that "there was insufficient evidence produced at the hearing before the Board to establish what activities constitute the duties of a registered nurse in Oregon." 502 P2d at 268. The court treated this insufficiency of evidence as a failure to prove what constitutes the controlling professional standard in this case.

Two separate issues are involved in the present case: (1) what evidence is necessary to establish a standard of professional conduct, and (2) what evidence is sufficient to prove that a standard, once established, is breached?

■ The Court of Appeals confused these two issues by reasoning that because there was insufficient proof that the daughter performed the duties of a registered nurse, there was insufficient proof of the standard of

professional conduct to which the mother is held. The court said that "A review of the transcript of these proceedings reveals no attempt by the Board to establish what acts are or are not circumscribed by the concept of 'professional nursing duties' through expert testimony." 502 P2d at 268-69. Expert testimony is not needed to establish that aiding and abetting another to hold oneself out as a registered nurse is a violation of the standards of professional nursing.[1] The standard having been established, the only issue is whether there was sufficient evidence to prove that the standard was violated.

The trial court found that there was not only insufficient evidence as to the existence of the standard, but also "as to acts derogatory thereof." The Court of Appeals held that the scope of review at the circuit court level was de novo and that the scope of review in the Court of Appeals was for "error of law." 502 P2d at 269.

We find the Court of Appeals' analysis of the scope of judicial review to be incorrect. Judicial review by the trial court of the Board's determination in this case was governed by former ORS 678.121 (3), which read:

"On appeal the court shall consider the record certified by the secretary of the board and such other evidence or testimony that either party may offer and introduce; and the court may approve, reverse or modify the order of revocation or suspension entered by the board."

[1] Cf., Board of Medical Examiners v. Mintz, 233 Or 441, 378 P2d 945 (1963).

ORS 678.021 (2) provides that it is unlawful for an unlicensed person "* * * to hold oneself out to be a licensed professional nurse or to append the letters R.N. to her name." ORS 161.220 provides that it is a crime to aid or abet in any criminal act.

The Court of Appeals held that ORS 678.121, although not identical to ORS 482.490, the statute interpreted in *Stehle v. Department of Motor Vehicles,* 229 Or 543, 368 P2d 386, 97 ALR2d 1359 (1962), was "so substantially similar in its import as to require the same interpretation with regard to the scope of judicial review." 11 Or App at 362, 502 P2d at 269. In *Stehle* we held that the statute provided de novo review at the trial level of the board's action. ORS 482.490 provided as follows:

> "Any person denied a license or whose license has been suspended or revoked by the department, except where such suspension or revocation is mandatory under this chapter, shall have the right to file a petition within 30 days thereafter for a hearing in the matter in the circuit court of the county wherein he resides. Such court shall set the matter for hearing upon 10 days' written notice to the department, and shall take testimony, examine into the facts of the case and determine whether the petitioner is entitled to a license or is subject to suspension or revocation of license under this chapter."[2]

We think that there are sound reasons for distinguishing the scope of review under ORS 482.490 from the scope of review under ORS 678.121. ORS 482.490 was a part of the procedure set up for the revocation and suspension of an automobile driver's license. In interpreting ORS 482.490 in *Stehle,* we emphasized the fact that under the procedure provided for the revocation or suspension of a driver's license the administrative hearing was not of record and that therefore it would be difficult, if not impossible, for the trial court to determine whether there was sub-

---

[2] Amended Oregon Laws 1963, ch 97, § 15; Oregon Laws 1971, ch 734, § 74.

stantial evidence to support the administrative order. We also could have noted that the procedure contemplated at the administrative stage for suspension and revocation of a license was limited and informal, the hearing being "before a representative of the department [of motor vehicles] in the county wherein the licensee resides." Former ORS 482.450 (2). We also regarded as significant the manner in which the statute described the trial court's function, directing it to "take testimony, examine into the facts of the case and to determine whether the petitioner is entitled to a license or is subject to suspension or revocation of license * * *." Finally, we noted that the standards by which the suspension or revocation of a driver's license was to be tested were cast in terms of the negligence or recklessness standards commonly applied in and appropriate to judicial proceedings.

We think that the procedure for the revocation or suspension of licenses to practice professional nursing is significantly different. The administrative hearing procedure under Chapter 678 is much more formal than that found in Chapter 482, provision being made for representation by counsel, for the subpoena of witnesses, books, papers and documents, and for other matters related to a formal judicial proceeding. Upon appeal, the board is required to file with the clerk of the circuit court the pleadings, a transcript of testimony, exhibits, etc., thus providing a reviewable record not contemplated in the procedure under ORS 482.490.

It is proper that the legislature would accord to the holder of a professional license greater procedural safeguards against its loss than to the holder of a driver's license. And since one of the character-

istics of a profession is its responsibility to formulate standards of conduct for its members, it is to be expected that the legislature would intend to vest in a board made up of members of the profession a certain amount of leeway in applying those standards in disciplinary proceedings.

■ It will be noted that ORS 678.121 (3) provides that the trial court shall consider not only the record certified by the secretary of the board, but also "such other evidence or testimony that either party may offer and introduce * * *." The fact that other evidence can be adduced in the trial court is not to be taken as indicating a legislative intent to provide a de novo review. As observed by 2 Cooper, State Administrative Law 626 (1965):

> "* * * [W]here the new evidence is considered by the court itself, it is thereby enabled, pro tanto, to supplant the agency's initial determination. In such cases, the court may make new findings of fact; but the findings should relate only to those issues with respect to which the court has taken evidence; and in making new findings, the reviewing court should accord proper deference to the findings made below."

While ORS 678.121 (3) has not been construed in any of our previous cases, similar statutory language has been construed in other states. Thus in *Lamb v. Mozingo,* 198 Va 432, 94 SE2d 457, 461 (1956), the court held that where the statute provides that the trial court "shall hear the appeal on the record" of the administrative agency and in addition any "other evidence as the ends of justice require," the trial court must not vacate the agency's order if the findings are supported by substantial evidence and it has applied the correct principles of law. Only when

the additional evidence alters the conclusion drawn from the record as a whole can the trial court reverse.[9]

■ It is our conclusion, then, that the test which the trial court should have applied is whether there was substantial evidence to support the Board's conclusion that Fern Ward acted in derogation of her professional responsibilities. Since it is clear from the record that there was such evidence to support the Board's order, the trial court erred in setting it aside and the Court of Appeals erred in affirming the judgment of the trial court.

Reversed.

---

[9] Lamb v. Taylor, 198 Va 621, 96 SE2d 124 (1957); Lamb v. Rubin, 198 Va 628, 96 SE2d 80 (1957). Similarly, in Bankers Life and Casualty Co. v. McCarthy, 11 Ill App2d 334, 137 NE2d 398 (1956), the Illinois Court of Appeals (First District), held that language identical to that of ORS 678.121 does not call for a hearing de novo. See also Atkinson v. Parsekian, 37 NJ 143, 179 A2d 732, 96 ALR2d 602 (1962).