TANZER, J.
After a hearing, the Board of Examiners for Speech Pathology and Audiology issued an order denying petitioner a license to practice audiology. Petitioner seeks review of that order.
Petitioner applied for a license under ORS 681.300(1) which provides:
"The board may waive the examination and educational requirements of ORS 681.260 for those qualified applicants who, on July 3,1973, are actively engaged in the practice of speech pathology or audiology in this state, providing that they file a license application within one year of July 3, 1973.”
The Board denied the application based upon its conclusion that petitioner "was not actively engaged in the practice of audiology in Oregon as of July 3,1973.”
 In two assignments of error, petitioner makes the same argument: that the Board’s order must be set aside because it is not supported by expert testimony, presented at the hearing, as to what constitutes the active practice of audiology. Petitioner contends that absent rules or regulations which define the practice of audiology, such expert testimony was required.[1]
*[938] Petitioner relies upon our decision in Corcoran v. Bd. of Examiners, 25 Or App 749, 550 P2d 1391 rev den (1976), in which we held that the Board was not required to promulgate rules defining the terms used in ORS 681.300(1). Absent such rules, however, we held that expert testimony was necessary to establish whether the petitioner’s activity constituted the practice of audiology:
"* * * [T]he Board’s discretion in awarding and denying licenses under the grandfather clause was not without limitation. In the absence of appropriate núes or regulations it was incumbent upon the Board to establish by means of 'expert’ testimony a standard against which the qualifications and practice of an applicant could be measured.” 25 Or App at 756-7.
Insofar as this statement requires the Board to rely upon the testimony of outside experts rather than on the expertise of its members in determining what constitutes the active practice of audiology, it is inconsistent with the Supreme Court’s holding in Ward v. Ore. State Bd. of Nursing, 266 Or 128, 510 P2d 554 (1973). Moreover, such an absolute requirement is also unreasonable, unnecessary and inconsistent with the law of administrative review.
In Ward, the Board of Nursing revoked a license on the ground that the licensee had aided her unlicensed daughter "to perform the duties [of] and serve as a registered nurse.” This court held that such revocation was improper absent some evidence in the record as to what constitutes the practice of nursing. Ward v. Ore. State Bd. of Nursing, 11 Or App 353, 362, 502 P2d 265 (1972). In reversing, the Supreme Court, at least implicitly, rejected this conclusion. Ward v. Ore. State Bd. of Nursing, 266 Or at 130-31. Presumably, it did so because it deemed expert testimony unnecessary to enable the Board of Nursing, a body composed of nurses, to determine what are the duties of a professional nurse.
The same logic applies in this case. Expert testimony before an expertise-based professional tribunal *[939] is unnecessary on the issue of whether certain conduct constitutes the practice of audiology. Members of the Board of Examiners in Speech Pathology and Audiology must be expert in their fields. The Board is required by ORS 681.410(1) to be comprised of persons licensed in the disciplines which it is charged with regulating. It is rational to assume that they will rely upon their training and expertise in the performance of their duties. Their expertise qualifies them to form an opinion as to what constitutes the practice of their respective interrelated professions. In fact, even where expert testimony is offered, its effect on fact-finding must be more formal than real because an expert Board member is likely to evaluate the credibility of expert testimony according to the degree of congruence it bears with the member’s own opinion.
A requirement that expert opinion testimony be presented to an expert fact finder may be arguably appropriate where administrative or judicial review is de novo on the record. Where, as here, review is for substantial evidence, however, ORS 183.482(8)(d), and where there are no unusual circumstances regarding which expert testimony would be helpful to the fact finder, expert testimony would serve no purpose. The pertinent opinion is essentially the product of a process of expert reasoning. We require that the reasoning of the administrative tribunal relating the facts and law to be explicit, McCann v. OLCC, 27 Or App 487, 566 P2d 973 (1976) rev den (1977), and where the tribunal is expert there is no reason to require a testimonial foundation for that reasoning. Here the order sets out the facts found and rationally relates them to the statutory criteria. It is therefore sufficient.[2]
*[940] We hold that expert testimony defining the practice of audiology would serve no purpose in this case and was, therefore, unnecessary. This is not to say that such testimony would not be appropriate and desirable in unusual circumstances or that a party should be barred from offering it; only that it is not a necessity. This conclusion is consistent with the general rule, see 2 Davis, Administrative Law Treatise § 14.13 (1958), and with sound administrative policy. The holding of Corcoran v. Bd. of Examiners, 25 Or App 749, 550 P2d 1391 rev den (1976), to the contrary is overruled.
Affirmed.

The Board of Examiners is not required to promulgate rules defining the practice of audiology. Corcoran v. Bd. of Examiners, 25 Or App 749, 550 P2d 1391 rev den (1976). See generally, Ward v. Ore. State Bd. of Nursing, 266 Or 128, 510 P2d 554 (1973); Board of Medical Examiners v. Mintz, 233 Or 441, 378 P2d 945 (1963). The legislature has defined the practice of audiology with sufficient specificity and therefore further definition by rule would be less efficacious and more difficult here than in other contexts. OKS 681.205(4) provides:
" 'Practice of audiology means the application of principles, methods, and procedures of measurement, testing, appraisal, prediction, consultation, counseling and instruction related to hearing and hearing impairment for the purpose of modifying communicative disorders involving speech, language, auditory function, including auditory training, speech reading and hearing aid evaluation, or other behavior related to hearing impairment.”
Two audiologists testified as experts before the Board on petitioner’s behalf. Both expressed the opinion that petitioner was engaged in the practice of audiology on the relevant date. The Board expressly rejected their testimony as biased.

The Board’s order recited that during the relevant period of time petitioner was employed by a manufacturer of hearing aids. His duties were primarily in sales and public relations. They did not include diagnostic testing, audiotoiy training, or treatment of patients to help them overcome hearing loss. Petitioner also developed and taught a community college course for persons seeking to become certified hearing *[940] aid dealers, and worked part time for approximately two weeks per year, performing simple audiological tests for a medical doctor.
The Board reasoned that only a small percentage of petitioner’s career activities could be characterized as the practice of audiology, and that these were only incidental to his ordinary business activities. Therefore, the Board concluded, petitioner was not “actively engaged in the practice of audiology * *