Submitted February 2, placed on probation February 27, 1979

## In re: Complaint as to the conduct of ALFRED M. VARNES, JR., *Accused.*
## (No. 1354, SC 25756)

591 P2d 366

Michael T. Bailey, Portland, for the accused.

Monte Bricker and Gary R. DeFrang, Portland, for Oregon State Bar.

PER CURIAM.

**PER CURIAM.**

The Oregon State Bar charged the accused with neglecting the interests of five different clients. In his brief the accused states: "Although the hearing before the Trial Board developed some conflict in the evidence, it was generally undisputed by the accused that the facts alleged by the Bar in its Complaint were true."

The charges are typified by the Disciplinary Review Board's summary of the first charge:

"The accused was retained by George W. Hartley, III on December 10, 1975 to appear on his behalf in a Multnomah County Circuit Court case wherein Hartley was named defendant. The accused received a retainer fee at the time of his employment. However, he was charged with having failed to make a timely appearance and because of his neglect and delay a default judgment was entered on April 23, 1976."

Two of the charges involved the accused representing clients in criminal cases. All the charges were based upon conduct between December 1975 and the spring of 1977.

The accused called a psychiatrist, Dr. Pidgeon, who testified that the accused came to him for medical assistance in June 1977. The evidence was that the accused had been consulting another psychiatrist for the prior two years but was dissatisfied because the earlier psychiatrist could not see him frequently enough. Dr. Pidgeon hospitalized the accused and diagnosed his condition as manic-depressive illness. This illness comes periodically. In the case of the accused, it exhibits itself by phases of both hyperactivity and depression. In the depressive stage, the symptoms are lack of activity, lack of interest in doing work, etc. Either hyperactivity or depression could account for the accused not timely performing for his clients.

[465]

Dr. Pidgeon treated the accused with various types and quantities of drugs. Dr. Pidgeon testified that if the accused continues the medication he is now taking and continues "his supportive psycho-therapy" with Dr. Pidgeon (two office visits per month), the accused "would be in control of things, and able to function properly."

The doctor's "deduction" was that the accused would have to be on medication of the nature he is now taking for the rest of his life, although sometimes people with this illness "seem to taper off as they get older."

For reasons which are not apparent from the record, despite the accused's admission that the charges of the Bar were correct, the Trial Board found the accused not guilty of four of the six specific charges. The Board recommended a public reprimand. The Disciplinary Review Board found the accused guilty of all charges and recommended suspension for one year and thereafter until he makes a showing that he is fit to practice law.

The accused worked as a deputy sheriff in Multnomah County for the seven years prior to his admission to the bar in 1967. He was in general practice in Portland except for two years as a prosecutor in the Portland City Attorney's office. At the time of the hearing in April 1978 and for about six months prior, the accused practiced in some capacity in a respected practitioner's office.

There is no direct evidence to contradict the assertion that the accused's mental illness caused the deficiencies in his representation of clients. The inferences from the evidence also support that conclusion. *In re Richard F. Crist,* 258 Or 88, 481 P2d 74 (1971); *In re C. E. Wheelock,* 249 Or 572, 439 P2d 872 (1968); and *In re Ronald L. Ricketts,* 249 Or 575, 439 P2d 873 (1968), were cases in which we concluded that the

lawyers' ethical problems were caused by a psychiatric condition.

*In re Ricketts, supra,* is typical of these three cases. The client had a worker's compensation claim. The attorney falsely represented to his client that he filed the claim. The attorney then falsely informed his client of various legal maneuvers which never occurred, culminating in an imaginary order on an imaginary demurrer which ended the imaginary case. The Trial Board and this court found the client's claim to be of dubious merit. We held:

> "The obvious psychiatric problem in this case has been explained in part by a rehearsal of the anxieties and tensions suffered by the accused. We are satisfied that the conduct of the accused was not the result of a moral defect, but rather was the product of a mental problem. * * *." 249 Or at 576-577.

In all three of these cases we placed the lawyers on probation. We conclude that is an appropriate order in this case.

Dr. Pidgeon at the hearing stated his willingness to assist in administering probation for the accused. The accused is placed on probation. The conditions of the probation are: (1) that Dr. Pidgeon submit to the Oregon State Bar quarterly reports on the condition and behavior of the accused (this was a condition in *In re Crist, supra,* (258 Or 88)); (2) that Dr. Pidgeon report immediately to the Bar any indication that the accused's condition does or threatens to interfere with his practice or that the accused is not following the directions of the doctor, including the taking of medication or making the prescribed office visits; and (3) that the accused agree in a writing delivered to the Bar to the above conditions and that the accused will pay all charges of Dr. Pidgeon for his medical services and reports to the Bar. If Dr. Pidgeon becomes unwilling or unable to perform, a psychiatrist acceptable to the Bar may be substituted for Dr. Pidgeon.

[467]

Unlike the three cases cited, the prognosis in this case is that the condition may be permanent. For this reason the probation shall be for a minimum of two years and thereafter until such time as the accused can persuade this court that the probation should be terminated or the conditions of probation should be changed.

The evidence was that in most if not all of the matters for which the accused was charged, the client paid the accused a retainer or fee. The accused either failed to perform or did not perform in a timely manner the work he contracted to do; therefore, a further condition for probation shall be that the accused forthwith repay those fees. (At the hearing the accused stated he had not yet done so because of the pendency of this disciplinary proceeding.)

It is also ordered that during the period of probation the accused's right to practice law may be suspended summarily upon motion of the Oregon State Bar supported by evidence that the accused's mental illness is likely to affect his ability to carry out his professional responsibilities.

Placed on probation.