Submitted on petition and record October 10, accused suspended November 20, 1984

In re Complaint as to the Conduct of

JON H. PAAUWE,
*Accused.*

(SC S30944)

691 P2d 97

Alan B. Holmes, Medford, filed the petition for accused.

PER CURIAM

## PER CURIAM

In this attorney disciplinary case the accused was charged by the Oregon State Bar with violations of DR 1-102(A)(4),[1] DR 6-101(A)(3),[2] DR 7-101(A)(2),[3] DR 7-101(A)(3)[4] and DR 1-103(C).[5]

The Trial Board found the accused guilty of violating all the charges except DR 1-102(A)(4).[6] The Trial Board recommended suspension from the practice of law for a period of one year to be imposed only if, during a period of three years, the accused fails to: (1) refrain entirely from the use of

---

[1] DR 1-102(A)(4) provides:

"(A)  A lawyer shall not:

"* * * * *

"(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[2] DR 6-101(A)(3) provides:

"(A)  A lawyer shall not:

"* * * * *

"(3)  Neglect a legal matter entrusted to him."

[3] DR 7-101(A)(2) provides:

"(A)  A lawyer shall not intentionally:

"* * * * *

"(2)  Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105."

[4] DR 7-101(A)(3) provides:

"(A)  A lawyer shall not intentionally:

"* * * * *

"(3)  Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

[5] DR 1-103(C) provides:

"(C)  A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

[6] The Trial Board found the accused guilty of violating another Disciplinary Rule not charged in the complaint. The rule, however, cannot be identified because of a typographical error in the Trial Board's Findings, Conclusions and Recommendations.

intoxicants and continues actively in an alcohol rehabilitation program, (2) discontinue the delay and neglect which is displayed by the record in this case, and (3) permit a member of the Oregon State Bar designated by the Board of Governors to monitor his continued participation in an alcohol rehabilitation program.

The Disciplinary Review Board found the accused guilty of violating DR 6-101(A)(3) and DR 1-103(C) but not guilty of violating DR 1-102(A)(4), DR 7-101(A)(2)and DR 7-101(A)(3), and recommended a public reprimand with a period of probation.

This disciplinary proceeding arose from the accused's representation of Robin Savage on charges of driving under the influence of intoxicants, driving while suspended and carrying a concealed weapon on October 19, 1982. Savage was convicted on all three counts and sentenced to a jail term of nine months.[7] Savage was to report to the county jail on November 15, 1982, to begin serving his sentence. On November 15, 1982, the accused arranged for a set over of the reporting date to November 22, 1982. The accused, however, failed to communicate with Savage regarding the November 22 reporting date. Savage testified that he desired a continuance in order to fulfill commitments as a fishing guide he had scheduled for November and December.

The accused admitted that he did not inform Savage of the November 22 date. He testified that he was reluctant to tell Savage and his wife that he could not postpone Savage's reporting date for the amount of time Savage wanted. Savage worked at the coast during the months of November and December but called his home numerous times to see if the accused had attempted to contact him. Mrs. Savage testified that during this period of time she made a number of calls to the accused's office but had never been able to talk with him.

Savage testified that he called the accused on December 27 or December 28, 1982, and spoke with him personally, and that the accused told him he would contact the judge "and make arrangements and let me know what date I would start" serving the sentence. The accused testified he

---

[7] Savage had been a client of the accused for a number of years and the accused had represented him on previous driving under the influence charges.

had no recollection of the telephone call. At exactly this time the accused was preparing to begin a 30 day suspension from the practice of law which resulted from *In re Paauwe,* 294 Or 171, 654 P2d 1117 (1982).

On January 23, 1983, Savage was arrested on three arrest warrants for failing to report to the jail on November 22. He had been in the process of arranging for work release status in order to continue his fishing guide work while incarcerated and the arrest caused Savage to be ineligible for work release for the first two months of his imprisonment.

The accused testified that for a long period of time before his representation of the accused on the charges involved here he had been drinking alcohol to excess. However, in March, 1983, he voluntarily talked with another attorney about his alcohol problem and began to attend Alcoholics Anonymous. He continued his attendance until the time of the hearing before the Trial Board.

DR 1-102(A)(4) prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. Both the Trial Board and the Disciplinary Review Board found the accused not guilty on this charge. We, too, find no falsification of facts. The problem here is not one of deliberate misrepresentation but of neglect. We find the accused not guilty of violating DR 1-102(A)(4).

DR 6-101(A)(3) commands that a lawyer shall not neglect a legal matter entrusted to him. We find by the accused's own admissions that he is guilty of violating DR 6-101(A)(3).

DR 7-101(A)(2) and DR 7-101(A)(3) both require the element of intent in a lawyer's failure to carry out a contract of employment or in the prejudicing or damaging of a client. Intent is a material and key element of DR 7-101(A)(2) and DR 7-101(A)(3). *In re Collier,* 295 Or 320, 667 P2d 481 (1983); *In re Hereford,* 295 Or 604, 668 P2d 1217 (1983). It is clear that the accused acted negligently in not advising Savage of the November 22, 1982, date, but the evidence that the accused acted with intent in failing to notify Savage or that he intentionally prejudiced Savage is not clear and convincing. We find the accused not guilty of violating DR 7-101(A)(2) and DR 7-101(A)(3).

The alleged violation of DR 1-103(C) is based on the accused's failure to reply to the Bar's request for a response from the accused regarding Savage's complaint.[8] The Bar first asked the accused to respond by March 14, 1983. A second letter was sent by the Bar and a return receipt indicated the letter was received by the accused's office on March 17, 1983. On April 9, 1983, the investigator for the Local Professional Responsibility Committee contacted the accused by phone. Although the accused promised to respond to the complaint, he failed to do so. A letter was sent to the accused by the investigator on May 12, 1983. The accused did not respond to that letter and failed to return the investigator's telephone calls. Even after the accused was notified that the Local Professional Responsibility Committee Chair had been advised that the accused had not responded to the numerous contacts and that the Local Professional Responsibility Committee would hold a hearing on June 21, 1983, the accused still failed to respond. Finally, by letter dated July 9, 1983, the accused responded to the complaint.

DR 1-103(C) requires lawyers who are the subject of disciplinary investigation to respond to inquiries and to comply with reasonable requests made by representatives of the Oregon State Bar. The above facts are admitted by the accused and are sufficient to find the accused guilty of violating DR 1-103(C).

With reference to the appropriate sanction, we are mindful of the previous discipline of the accused, *In re Paauwe, supra.* That case also involved DR 6-101(A)(3), and we found the accused guilty of neglecting a legal matter. We must also take into consideration the accused's admitted problem of excessive use of alcohol. Although the accused is participating voluntarily in Alcoholics Anonymous (two witnesses testified that he has not used alcohol since his involvement in the program), it is necessary that the accused continue to remain free from alcohol abuse. In view of all these circumstances, we conclude that the accused should be suspended and thereafter required to spend a period of time on probation for his own benefit, as well as for the benefit of the profession and the protection of the public. *See In re Lewelling,* 244 Or 282, 417 P2d 1019 (1966).

---

[8] DR 1-103(C) went into effect January 11, 1983.

The accused is suspended from the practice of law for a period of 63 days. Thereafter the accused shall be on probation for three years and must fulfill the following conditions: (1) that he refrain entirely from the use of alcohol and continue actively in an alcoholic rehabilitation program, and (2) that he permit a member of the Oregon State Bar designated by the Board of Governors to monitor his continued participation in an alcohol rehabilitation program. The monitoring Bar member shall submit quarterly reports to the Oregon State Bar regarding the accused's compliance. *In re Varnes,* 285 Or 463, 591 P2d 366 (1979). During this probationary period the accused will be subject to summary suspension of his right to practice law upon motion of the Oregon State Bar supported by evidence of a violation of a condition of probation. *In re Holman,* 297 Or 36, 682 P2d 243 (1984); *In re Richard F. Crist,* 258 Or 88, 481 P2d 74 (1971). *See* Oregon State Bar Rules of Procedure 6.2.

The Oregon State Bar is awarded costs.